The court is now in session again, and the next item on our docket is Witcher v. Yenchko, 5-25-0061. Mr. Mag, are you ready? I'm ready. All right, thank you. If you would, state your name, please. Of course. May it please the court, my name is Thomas Mag. I represent the plaintiff appellant of Witcher. This is a case that's brought, as relates to what's before this court, the Illinois Civil Rights Act of 2003. The underlying case was brought under the Illinois Constitution, at least in relevant part for today. I understand that I've got a bit of an uphill argument in light of a recent decision out of this court, the Baruchson case, and I don't shy away from it. I simply contend that Baruchson is wrongly decided. I guess it became the Illinois Civil Rights Act. I'm well aware of that, but I'm not having a little back panel here. All right, the first thing, I checked what I got here. So, be that as it may, obviously, at least two of you are intimately familiar with that decision. I assume all three of you are familiar with it. The bottom line of why Baruchson was wrongly decided, and this court should overrule its decision of not that many months ago, I think this year, is because it, while it may consider the statute as whole, it doesn't consider all of the words, and it inserts additional words that aren't there into the statute. Specifically, I want to be very precise here, in subsection C of the statute, upon motion a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation, to a plaintiff who is a prevailing party in any action brought, colon. And there are two subsections under that. And in between those two subsections is the word or. Pursuant to subsection B, clearly doesn't apply to this case. This is not a racial, sexual discrimination case. So, I'm not going to argue subsection 1 applies. But the or to is where it applies. Or 2, to enforce a right arising under the Illinois Constitution. The statute does not say or to enforce a right arising under the Illinois Constitution related to discrimination. Related to discrimination is not there. And it makes sense why it wouldn't be there if you look at why this statute was passed. This statute was passed for two reasons. One, the U.S. Supreme Court in 2001 decided the case of Buckham and Borden Care versus West Virginia Department of Health and Human Resources. And two, same year, the U.S. Supreme Court decided Alexander versus Sandoval. What did the U.S. Supreme Court do in those two cases that triggered our legislature to act? One, it affected racial discrimination claims. Two, it abolished the catalyst theory of attorney's fees that had been adopted by the overwhelming majority of federal appellate courts and most state supreme courts in federal civil rights litigation, 42 U.S.C. 1983 litigation. That caused an outrage. Maybe they were correctly decided under the statutes. Maybe they weren't. U.S. Supreme Court interpreted them that way. Our legislature, a state legislature, cannot overrule a U.S. Supreme Court decision on federal legislation, but it can create equivalent state remedies. That's what it did here. For the same reason that we had the Stan Musial Veterans Memorial Bridge crossing the river by St. Louis because our legislature wanted to honor two people or two groups, we have one statute here that is designed to the extent that a state legislature can provide under state law remedies that the U.S. Supreme Court said didn't apply under federal law. If you look at the legislative history, which is in the record, the legislature makes crystal clear. This is a good bill. It is designed to do two things. There were two U.S. Supreme Court decisions that did bad things. We want to overrule to the extent we can both of them. That's what this statute did. And again, there is not, there is a word or between the two subsections under C. Therefore, you have to give effect to that or, and you cannot add in there under subsection B, applicable in civil rights cases. The rule of statutory construction, the primary rule of statutory construction, as noted by the Illinois Supreme Court just in the last couple of years in Hart v. ISP, is to give the effect of the intent of the legislature. Everything else is secondary. The intent of the legislature. The intent of the legislature was to reinstate the catalyst theory in constitutional litigation across the board. It also had the intent of providing relief in discrimination cases. It intended to do both. And that's where Baruchson and the other appellate decisions go wrong, is they fail to give effect to the word or. And they insert in the language after or, and imply related to discrimination claims. I don't want to switch gears and interrupt your argument. Of course. There was a forfeiture issue that was raised. Could you address that a little bit? It's my understanding that the petition for attorney's fees wasn't raised until much later in the proceeding. Is that correct? The petition for attorney's fees, the statute itself says upon motion attorney's fees shall be awarded. Traditionally in civil rights litigation, the time to file an attorney fee petition is after a judgment has been entered. Judgment was entered in this case. And at that point, a motion for attorney's fees pursuant to the statute and pursuant to the custom in civil rights litigation was filed. That's not forfeiture. That's compliance with the statute and the pattern and practice of civil rights litigation. Did the initial complaint plead for attorney's fees? Yes, that's the primary reason the Civil Rights Act of 2003 was cited in the complaint. Thank you. Of course. The bottom line here is when you get right down to it, it's an issue of statutory construction. The legislature intended to create, to overrule the U.S. Supreme Court to the extent that the state legislature can by creating state remedies. Baruchson, as I said, wrongly interprets the statute because there's at least some ambiguity in it based on the fact that Baruchson and other cases have ruled the other way. It is appropriate to consider legislative history. I would ask that you reverse the trial court overrule Baruchson and direct the case to be remanded back to the trial court with directions to consider whether or not attorney's fees are appropriate with the understanding that it's not limited to racial, sexual, other discriminatory civil rights cases. All constitutional claims under the Illinois Constitution are covered. Thank you. I'll address you again shortly. All right. Thank you. All right. Mr. Horan? Horan. Horan. Usually it's Horan, but we pronounce it Horan. All right. If you would state your name and you may proceed. Yes. Good afternoon. Assistant Attorney General Sam Horan for the Defendant's Appellate. This court should affirm the circuit court's judgment for either two independent reasons. First, the plaintiff forfeited his argument for fees by failing to raise it in response to the Defendant's motion to dismiss and instead presenting it for the first time in a motion for reconsideration. Second, the plaintiff's argument for fees fails on its merits. This court has repeatedly explained, most recently in Baruchson, that the Civil Rights Act's fee-shifting provision applies only to claims alleging discrimination based on race, color, national origin, or gender, which plaintiff undisputedly has not brought. That interpretation follows from the Act's unambiguous text and canons of statutory construction, and plaintiff's argument that this court should break from its precedence based on legislative history is unpersuasive. I'll start with the forthature issue. Defendant's motion to dismiss the case has explicitly argued that plaintiff was categorically ineligible to recover fees under the Act because he did not bring a discrimination claim covered by the Act's fee-shifting provision. That's on pages 127 and 128 of the CLR. Plaintiff did not respond to that argument, either in writing or at the motion hearing. And only after this did to the circuit court dismiss the action did he present his argument for fees for the first time in a motion for reconsideration. It's well established that an argument advanced for the first time in a motion for reconsideration is forfeited, and we've cited the Evanston Insurance Company case in our brief. So do you dispute what Mr. Mack said, that he did request fees in the original complaint? The complaint cites the Civil Rights Act. It says we request fees pursuant to the Civil Rights Act. It doesn't develop any argument under the Act, and that was the only reference made to the Act until the motion for reconsideration. Certainly during the briefing and argument on the motion to dismiss, there was no discussion of the fee issue. And the complaint did not inquire formally for attorney's fees? It did. It mentioned attorney fees under the Civil Rights Act. But it didn't develop the argument, and he didn't raise it in response to the motion to dismiss. Which, you know, I think he acknowledged today that he doesn't dispute that it didn't come up during the motion to dismiss briefing. He argues that the plain language of the statute required him to wait to file a fee petition until after judgment. But there are at least two problems with that argument. First of all, nothing in the statute's language imposes that restriction. The statute says upon motion. It doesn't say when the motion can be filed and at the time of the motion to dismiss briefing. On Plaintiff's theory, he would already have been the prevailing party for purposes of the statute by, you know, and his view having catalyzed the change. Second, you know, even setting that aside, I think more fundamentally, nothing in the statute restricted defendant's ability to move to dismiss the entire case, including the fee request, when he did. Plaintiffs routinely include fee requests in their complaints, and defendants routinely move to dismiss entire complaints, including the fee request. And we cite, for example, the Rayfield case from the New York Supreme Court in our brief. Plaintiff essentially argues that there must always be a second round of fee briefing after the motion to dismiss stage in a case where the plaintiff has included a fee request in his complaint. But that simply isn't the law, as Rayfield shows. And Plaintiff has never identified any practical reason why this Court should burden courts and litigants with an extra round of briefing, particularly in a case like this one where defendant's argument as to fees was entirely legal, didn't require any factual development. At absolute minimum, if Plaintiff thought the fee issue was not ripe at the motion to dismiss stage, he could have argued as much in opposing the motion to dismiss, and instead he ignored the issue completely. That is forfeiture. Turning to the merits, this Court has repeatedly and correctly explained in Tolman, Johnson, Underwood, and Berukson that the Act's fee-shifting provision unambiguously applies only in claims, two claims, alleging discrimination based on race, color, national origin, or gender, which Plaintiff conceitedly has not brought. As those decisions have recognized, subsection C2's reference to a right arising under the Illinois Constitution appears in a section that creates an anti-discrimination cause of action and in a list that references that cause of action. So as Berukson and its predecessors explained, the clause should be understood in context to refer to a right against discrimination. My friend suggested that that would read the language out of the statute in some way. Remember, the or clause meaningless. Berukson and several of the preceding decisions directly rejected that argument. They explained that the clause still has meaning because a plaintiff might bring claims both under the statutory cause of action and under the State's equal protection clause. So it is not reading that language out of the statute. This Court's reading is also consistent with Illinois' adherence to the American rule, under which parties generally bear their own attorney fees, which Berukson noted the Illinois Supreme Court has noted requires that fee-shifting provisions like this one be interpreted strictly. It also aligns with the Act's purpose, which this Court recognized in Illinois Native American Bar Association, is to enable plaintiffs to advance discrimination claims. And it reflects the fact that the General Assembly does not hide elephants in mouse holes. It would not bury a massive change in the general availability of fees to claims brought under the Illinois Constitution in a subsection of a subsection of a statute that is otherwise entirely about discrimination. So as this Court's decisions recognize, the statute unambiguously applies only to discrimination claims. Plaintiff brought no such claim, so he is ineligible to recover fees. Plaintiff, I understand, to have conceded that this case is indistinguishable from Berukson, and his argument that the Court should disregard that precedent is unpersuasive for several reasons. First, Berukson and his predecessors of Berukson and Johnson have explicitly noted that the Act's language is unambiguous, meaning that legislative history can play no role in the analysis. Second... I would interrupt you, too. At the time of briefing, Berukson was up on a petition for leave to appeal, and that was in fact denied. Is that correct? Correct. I believe the petition was pending when the appellant's brief was filed, and by the time we filed our brief, I think it had already been denied. And your brief reflects that. Yes. Okay, that's what I thought. And Johnson, Toner, and Underwood also all had PLAs that were denied. All right, thank you. Second, so as this Court noted in McClintic, for example, it will generally follow its own decisions unless there is some good reason not to, or in the words of McClintic, unless it will create some serious detriment to the public interest. McClintic hasn't identified any. And that failure is particularly noteworthy because this is a case about statutory construction, and Toman has been binding precedent in this Court's interpretation of the statute, consistent with Toman, has been binding precedent on every circuit court in Illinois for almost a decade now. If the legislature believed that these decisions were wrongly decided, it could easily amend the statute to reflect that, and instead it has acquiesced in this Court's consistent construction of the statute over the past going on a decade, since Toman was decided in 2016. And lastly, as we explained in our brief, even if the Court were to look at legislative history, that legislative history actually supports Berkson's interpretation of the statute. The bill's sponsors emphasized several times that the measure did not create any new rights or new exposure for the state. But plaintiffs have never had the right to recover fees for any claim brought under the Illinois Constitution. So plaintiff's interpretation of the statute would create exactly the kind of new right or new exposure that the legislative history shows the General Assembly did not mean to create. But Berkson and his predecessors rightly rejected that interpretation, and the circuit court correctly followed those precedents in denying plaintiffs' fee requests. Unless the Court has any other questions, in that case, we will rest on our brief, and we respectfully request that this Court affirm the judgment of the circuit court. Thank you. Thank you. Mr. Connelly, we're back. Thank you, Your Honor. As to the issue of forfeiture, other than what I previously said, I would note, as the Court is well aware, forfeiture is a limitation on the parties, not the Court. The Court, even if it thought that I had forfeited or my client had forfeited, which I don't think is accurate, the Court has the full power to consider the merits of the argument, which is briefed. Also, sort of burying the provision in the statute, it's not buried. It's right in the middle of it. And the legislature was not attempting to create new remedies that it didn't believe that existed before. It believed that the U.S. Supreme Court was erroneous in its two decisions, Buchanan and the other decision, and was simply intending to put those remedies back on the table. But what about counsel's point? I mean, 10 years, they've been following the precedent. We've been following this precedent. The legislature could amend the law, right? I mean, why would they want to add it? They could add it, correct? They could. Generally speaking, unless the legislature has amended the statute and not addressed a point of existing case law, the fact that they have chosen not to act is not an indication of how the legislature intended the statute to act. If, on the other hand, if the legislature had come in and amended some other portion of the statute, that would be an indication that the legislature had acceded to that interpretation. But just letting a sleeping dog lie, maybe the political will in subsequent general assemblies isn't there to do this. The outrage is dim. People have forgotten. Just run into the catalyst theory. They don't even teach that in law school anymore. I don't know if they do or not. The fact that the legislature has let it lie is not an indication that that is what the intent of the legislature actually was. The bottom line is this. The language is there. The legislative history was there. The reason is there that the existing precedent on this interpretation either strikes out the word or in subsection 2 or alternatively inserts language limiting subsection 2 under C. This court cannot do that. No court can do that. That's the province of the legislature. And I would ask that Your Honors rule accordingly. Thank you. All right. Thank you. We'll take this matter under discussion. We'll issue a ruling in due course. And I believe we have to take a brief recess for technological reasons.